Robert VERNON, Appellant
(Plaintiff Below),

v.

The KROGER COMPANY, a corporation, Lasalle Square Associates, an Indiana Limited Partnership, Lavon R. Blankenbaker, General Partner, Waldemar Hefner Assoc., an Indiana Limited Partnership, Thomas L. Hefner, General Partner, Dwain F. Bower, Richard L.Johnson, Limited Partners, B.J. Realty, Inc., Garry B. Lindboe, and Vincent W. Todd, Appellees (Defendants Below).

No. 50S04–9907–CV–380.

Supreme Court of Indiana.

July 12, 1999.

Gregory Ball, Paul Kusbach Attorneys, South Bend, Indiana, Attorneys for Appellant.

John C. Hamilton, John E. Doran, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, Indiana, Attorneys for Appellee, The Kroger Company.

R. Kent Rowe, Steven D. Groth, Rowe & Rowe, South Bend, Indiana, Attorneys for Appellees, B.J. Realty, Inc., Gary B. Lindboe, and Vincent Todd.

## ON CIVIL PETITION FOR TRANSFER

SELBY, J.

Appellant Robert Vernon ("Vernon") brings this appeal of an adverse summary judgment ruling in a negligence action. This case is one of three that we decide today on the common premises liability issue of whether a landowner/invitor ever owes an invitee a duty to take reasonable care to protect the invitee from the criminal acts of a third party. Vernon filed a complaint against the Kroger company ("Kroger") and B.J. Realty for damages he sustained after he was assaulted in a parking lot owned by B.J. Realty and in front of a Kroger store. Both Kroger and B.J. Realty filed motions for summary

judgment on the grounds that no duty was owed to Vernon and, in the alternative, that any actions taken by defendants were not the proximate cause of the injury. After oral argument, the court entered summary judgment for both Kroger and B.J. Realty on the grounds that no duty existed. Vernon appealed the trial court's decision to the Court of Appeals, and the Court of Appeals affirmed. *Vernon v. Kroger,* 654 N.E.2d 24 (Ind.Ct.App.1995). Vernon then filed a petition for transfer with this Court. We now grant transfer to address the following issues: (1) whether summary judgment should be denied on the issue of duty; (2) whether the trial court acted within its discretion by denying defendants' motions to strike certain evidence; and (3) whether a motion by Vernon for partial summary judgment should be granted. We answer the first two issues in the affirmative and remand to the trial court for consideration of the remaining issues.

### FACTS

On the evening of December 6, 1987, Vernon went to the Kroger[1] store near his house in South Bend, Indiana, in order to buy a paper and some candy. Vernon parked his car in the parking lot beside the Kroger store. As Vernon was walking up to the sidewalk in front of Kroger's entrance, he noticed that a car was parked in front of the store and was blocking the handicap access ramp. Vernon saw three people inside of the car. Vernon had to walk around the car in order to get onto the sidewalk and into the store. A little more than ten minutes later, Vernon exited the Kroger store. The car with the three people was still parked in the same place in front of the store. The passengers in the car were laughing at people who had to avoid them in order to get to the parking lot. Vernon went to his car and began to exit from the parking lot.

Vernon was in a line of cars waiting to exit the parking lot, and each car had to turn by the parked car in order to exit. Each driver, before turning to exit, would look at the parked car in order to determine whether it was going to move or not. When it was

1. The Kroger store is located at LaSalle Square Shopping Center. Kroger leases space from the owner of the shopping center, B.J. Realty. B.J. Realty retains control of the parking area.

Vernon's turn to move by the parked car, he saw a man come out of the Kroger store, take some things from inside pockets of his coat, throw the goods on the seat of the car, and get into the car. Vernon, believing that the car was not going to move because the occupants were looking at the goods in the car, started to turn in front of the parked car. At the same time and without looking, the driver of the other car started to drive and ran into the side of Vernon's car.

Vernon rolled down his window so that he could tell the driver of the other car that there was no problem because Vernon was insured. Vernon heard one of the men in the car suggest that they go because they did not want the police to come, but another said that, if they left, then Vernon would get their license plate number. Vernon saw the man in the front passenger side get out of the car, crouch down, and sneak around the front of the car. The next thing Vernon remembers is that he was out of his car and that he was hit across the face with a metal bar. Vernon fell to the ground and was beaten and kicked. He lost consciousness and woke up in the hospital. A Kroger employee saw the license plate number of the assailants' car as it drove away and gave it to the police. The assailants, two brothers, were later apprehended.

## DISCUSSION

### I.

Vernon brought · a negligence action against both Kroger and B.J. Realty for the damages which he sustained due to the attack. Vernon alleged that defendants had a duty to keep the parking lot safe from foreseeable criminal attacks, that defendants breached this duty, and that the breach proximately caused his injuries. As was true in the two other cases decided today, *Delta Tau Delta v. Johnson,* 712 N.E.2d 968 (Ind.1999) and *L.W. v. Western Golf Ass'n,* 712 N.E.2d 983 (Ind.1999), defendants filed motions for summary judgment on the issue of duty. In this case, the trial court granted the motions. The issue before us in this case, like the

other cases, is whether the trial court properly ruled on the issue of duty.

■■■ This issue revolves around whether defendants owed plaintiff a duty to take reasonable care to protect plaintiff from the criminal attack of a third party. Though not argued by either party, it bears note that Vernon was an invitee of both Kroger and B.J. Realty. First, Vernon was injured while leaving the store where he had shopped. As such, he was an invitee of Kroger, and an invitor's duty to exercise reasonable care extends to providing a safe and suitable means of ingress and egress for the invitee. *See Lutheran Hosp. of Indiana, Inc. v. Blaser,* 634 N.E.2d 864, 868–69 (Ind.Ct.App.1994). Second, Vernon was injured in a parking lot which is owned by B.J. Realty and in which Vernon parked so that he could use a store in the shopping center owned by B.J. Realty. As such, he was an invitee of B.J. Realty and B.J. Realty owed Vernon a duty of reasonable care to keep the area safe.[2] *See Markle v. Hacienda Mexican Restaurant,* 570 N.E.2d 969, 975 (Ind.Ct.App.1991).

■■■ At this point, we confront the common question of the three opinions decided today: whether Kroger and B.J. Realty owed an invitee a duty to take reasonable care to protect against a third party criminal attack. As announced in *Delta Tau Delta v. Johnson,* a court answers this question by asking whether the totality of the circumstances demonstrates that the criminal act was reasonably foreseeable. 712 N.E.2d at 973. When determining whether the totality of the circumstances supports the imposition of a duty, a court must look to "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents, to determine whether a criminal act was foreseeable." *Id.* at 972. "A substantial factor in the determination of duty is the number, nature, and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the landowner knew or

---

2. Vernon argues in his brief that he is a third-party beneficiary of the lease between Kroger and B.J. Realty. The clause at issue states that "[a]ny claim arising from or out of the injury or death of any person while on the common area

shall be the responsibility of Landlord...." *Id.* We believe that this clause simply reflects Kroger's and B.J. Realty's negotiated assignment of liability for claims arising in the common area, once liability is, indeed, found to exist.

should have known that the criminal act was foreseeable." *Id.* at 973. While landowners have no duty to insure invitees' safety, they do have a duty to take reasonable precautions to prevent foreseeable criminal acts against invitees.

The record discloses the following relevant evidence. First, shoplifting was not an unusual occurrence at the Kroger store; it was enough of a problem that Kroger employed off-duty police officers to patrol the store and deter shoplifters. Second, several employees of Kroger testified in their depositions that some shoplifters would have a car waiting at the curb for a quick getaway. Third, several Kroger personnel and security guards testified in their depositions that they had witnessed shoplifters use physical force when stopped as they were attempting to escape. One employee, who had been an employee at the LaSalle Square Kroger since it opened, testified that about five to ten percent of the shoplifters would use physical force if stopped as they were trying to escape. Another employee, a police officer who worked part-time as a security guard at Kroger, testified that "probably four of ten would probably in some way, shape, or form, try to physically resist besides running. They'd either pull away, swing at you. I've lost my radio before; my gun fell out of my holster before, where it came to a physical confrontation." (R. at 140–45.) Furthermore, several other police officers who worked part time as security guards at Kroger and a manager testified about physical confrontations with shoplifters whom they had stopped. Fourth, several Kroger employees testified to criminal occurrences outside of the store in the parking lot. For example, an employee testified that, "Every so often, you would get a purse snatching. Muggings, purse snatching-wise, that happened." (R. at 444.) Finally, the record contains evidence of police runs made to the Kroger store address.[3] This evidence shows that the police made 19 runs for crimes of violence between the years 1985 and 1987 and that

police runs for battery and shoplifting increased from 22 in 1986 to 59 in 1987.

As a whole, the evidence shows that Kroger could reasonably foresee that a shopper might be injured by crime while shopping in or around the Kroger store and, thus, is sufficient to hold that a duty exists. While criminal activity may not have been an everyday occurrence at and around the Kroger store in LaSalle Square, it certainly was not uncommon. Calls to the police for crimes of violence occurred, on average, once every other month between 1985 and the date of this crime. Calls to the police for battery and shoplifting occurred, on average, almost once a week for the two years preceding the date of this crime. A majority of these crimes relate to some sort of threat to personal safety. Furthermore, this type of attack was even more foreseeable to Kroger given its experience with shoplifters using force to avoid being caught. A court can reasonably infer that the perpetrators in this case had shoplifted, were unwittingly stopped by Vernon, and resorted to violence to avoid being caught. If shoplifters would use physical force to escape armed and known security guards, it stands to reason that they might not hesitate to use force against unarmed shoppers who get in their way.

As for B.J. Realty, the issue is a bit more complex. B.J. Realty claims that no prior assaults or batteries, no prior robberies, and no prior automobile accidents had ever occurred at either the LaSalle Square parking lot or Kroger. Further, B.J. Realty claims that, even if such prior incidents did occur, Kroger never informed B.J. Realty of them or its security and shoplifting problems. As to B.J. Realty's claim of no prior problems in the parking lot, this claim simply does not square with the unrefuted testimonies of Kroger's employees and with the evidence of police runs. Whether or not B.J. Realty was aware of prior shoplifting, battery, assault, or other criminal incidents does indeed factor into the duty question. It may be true, as

---

**3.** As discussed later in this opinion, the evidence apparently originates from a computer printout which is not in the record. However, the record does contain an affidavit by a police officer which verifies the information contained in the printout (police runs to Kroger's address for vari-

ous crimes) and an affidavit by an expert witness detailing the number and types of crimes listed in the printout. At this stage, defendants have provided no evidence or reason to discount what is in the record or any reasonable inferences to be derived therefrom.

B.J. Realty asserts, that Kroger never informed B.J. Realty about its shoplifting and security problems or any incidents that occurred outside of the Kroger store. However, that leaves unaccounted the over ninety police runs that were made to LaSalle Square (and the evidence of police runs is limited to the Kroger address—inferentially there would be many more made to the shopping center as a whole) during the two years prior to the attack. As mentioned above, that works out to almost one a week for two years. We find it hard to believe that a landowner would be unaware of this type of police activity on its land. At the least, there remains a genuine issue of material fact, that is, whether B.J. Realty was aware of the prior incidents on its property.

 As both Kroger's and B.J. Realty's motions for summary judgment are denied on the issue of duty, we must next address a second issue raised in defendants' motions for summary judgment: whether summary judgment should be granted on the issue of proximate cause. Regarding the issue of proximate cause, we have previously stated,

> [T]he authorities are clear that where the negligent actor's act or omission has the effect of setting in motion the chain of events leading to the injury, the key to holding that act or omission to be the proximate cause of the injury is that the ultimate injury be one that was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission. Our case law recognizes this important limitation in determining whether the actor's act or omission is the proximate cause of the injury complained of.

*Havert v. Caldwell,* 452 N.E.2d 154, 158 (Ind. 1983); *see Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 520 (Ind.1994). The law also recognizes the doctrine of intervening and superseding cause. *Hooks SuperX,* 642 N.E.2d at 520. An intervening or superseding cause is one which legally breaks the chain of causation and relieves the original wrongdoer of responsibility. *Id.* Such an act

occurs when the "harm resulting from the intervening act could not have been reasonably foreseen by the original negligent actor." *Id.* Determining whether the original tortfeasor proximately caused plaintiff's injuries is primarily a question of fact to be determined by the jury. *See Conder v. Hull Lift Truck, Inc.,* 435 N.E.2d 10, 15 (Ind. 1982).

 In the present case, the record precludes us from granting summary judgment in favor of defendants on the issue of proximate cause. We are not presented at this stage with the issue whether either defendant breached the duty of reasonable care, and if so by what act or omission. However, assuming for purposes of this decision that it can be established that defendants breached their duty of reasonable care, we believe that it is a question of fact whether defendants could reasonably have foreseen that their failure to provide sufficient security would lead to injuries such as Vernon's. Given the prior occurrences on the property, we believe that a jury could reasonably conclude that defendants' negligence created a foreseeable risk to Vernon and that the negligence was a substantial factor in Vernon's injuries.

## II.

The second issue before this Court is raised by both Kroger and B.J. Realty, and it concerns several evidentiary submissions offered by Vernon in his opposition to the defendants' summary judgment motions. The pertinent submissions in question are an affidavit by Daniel Kennedy and an affidavit by David Chapman.[4] Both defendants argue that the evidence was untimely submitted and should be struck. In the alternative, defendants argue that some of the evidence was not properly authenticated and was irrelevant.

Discovery was originally set to be closed on August 1, 1993, but, by agreement of the parties, it was extended until September 30, 1993. Kroger and B.J. Realty filed motions for summary judgment, respectively, on No-

---

4. The parties also mention a computer printout sheet which apparently lists police runs that had been made to Kroger's address at the shopping center. We are unable to find this printout in the record. However, the printout is referred to by both Kennedy and Chapman in their affidavits.

vember 9, 1993 and November 10, 1993. On December 9, 1993, Vernon filed a memorandum in opposition to the summary judgment motions. Filed with the memorandum, and designated as evidence to oppose the motion, Vernon submitted affidavits by Daniel Kennedy and David Chapman.[5] None of the information in the affidavits had previously been disclosed to defendants. Both Kroger and B.J. Realty filed motions to strike this new evidence, primarily because this information had been asked about in the original interrogatories and Vernon had failed to supplement his original answers. At the summary judgment hearing, oral argument was heard on the motions. In a written order, the trial court denied defendants' motions to strike.

■ A trial court is accorded broad discretion in ruling on issues of discovery, and an appellate court will interfere only when the appealing party can show an abuse of that discretion. *Terre Haute Reg'l Hosp., Inc. v. Trueblood,* 600 N.E.2d 1358, 1362 (Ind.1992). A trial court is also accorded broad discretion in determining appropriate sanctions for a party failing to comply with a trial court's discovery order. *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993). "Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *Id.* The trial court may abuse that discretion, however, if its decision is clearly against the logic and effect of the facts and circumstances of the case, or if it misinterprets the law. *Id.*

■ In the present case, the trial court did not commit an abuse of discretion by refusing to strike the evidence. Vernon submitted evidence after discovery was closed and which arguably was asked for in defendants' interrogatories. However, this evidence was not a complete surprise as Vernon did disclose the names of the two witnesses in question. In this situation, the trial court could reasonably have determined that the evidence should not be struck. *See Lucas,* 609 N.E.2d at 1196. The trial court may have determined that a continuance, had one

been asked for, would be the more appropriate response in this situation. *See id.*

Kroger and B.J. Realty also argue that some of the contested evidence is inadmissible under the Indiana Evidence Rules. Specifically, defendants argue that the computer printout is inadmissible because it is unauthenticated and irrelevant, and that Kennedy's affidavit is inadmissable because it is prejudicial and irrelevant.

■ First, we note that defendants' motions to strike raised evidentiary objections to the computer printout and to a written statement by Vernon and that, at the summary judgment hearing, the only evidentiary objection made was in reference to the computer printout. Therefore, Kennedy's affidavit was not objected to on evidentiary grounds at the hearing and its admittance cannot be appealed on such grounds now. *See* Ind. Evidence Rule 103; *Angleton v. State,* 686 N.E.2d 803, 811 (Ind.1997).

Second, as stated earlier in this opinion, the computer printout alluded to by all parties as if it were in the record is not in the record. As such, it can hardly be considered by this Court.

### III.

■ Finally, Vernon asks this Court to issue an opinion on a motion which the trial court has not addressed. In their answers to Vernon's complaint, both Kroger and B.J. Realty pleaded, as an affirmative defense, that the assailants were non-party defendants. On September 7, 1993, Vernon filed a motion for partial summary judgment on defendants' non-party defenses. Before a hearing or ruling was ever had on this motion, defendants' motions for summary judgment on the negligence claims were granted, thus, negating any need to rule on Vernon's motion. Vernon asks, on appeal, for a ruling on the merits of his motion.

Vernon is asking this Court to address the merits of a motion which, as a result of this opinion, is still before the trial court. We decline to address the merits of his motion

---

**5.** Kennedy's affidavit detailed evidence of prior incidents in and around the Kroger store and professed an expert opinion about Kroger's negli-

gence. Chapman's affidavit concerned the authenticity of the aforementioned computer printout sheet.

because it is an issue best left for the trial court.

## CONCLUSION

We vacate the Court of Appeals' decision, reverse the trial court, and remand for further consideration in light of this opinion.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs in result without separate opinion.