The KROGER CO., d/b/a Kroger Supermarket at 8150 Rockville Road, Indianapolis, Marion County, Indiana, Appellant–Defendant,

v.

Lu Ann B. PLONSKI, Appellee–Plaintiff.

No. 49A02–0807–CV–610.

Court of Appeals of Indiana.

April 28, 2009.

Transfer Granted July 30, 2009.

ty. Appellant's App. at 71.

Matthew L. Hinkle, Coots Henke & Wheeler, Carmel, IN, Attorney for Appellant.

I. Marshall Pinkus, Pinkus & Pinkus, Indianapolis, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

In this interlocutory appeal, the Kroger Co., d/b/a Kroger Supermarket ("Kroger"), appeals the trial court's denial of its motion for summary judgment regarding a complaint filed by Lu Ann B. Plonski. Kroger raises several issues, which we consolidate and restate as whether the trial court erred by denying Kroger's motion for summary judgment on Plonski's negligence claim. We affirm.

The relevant facts as designated by the parties follow. On the afternoon of October 2, 2003, Plonski went to the Kroger store on Rockville Road in Indianapolis. Plonski often did her grocery shopping at that store. The front of the store faces to the south, and Plonski parked her vehicle close to the entrance and next to the building in a parking area east of the building. After she purchased her groceries, she approached her vehicle, placed her purse in the shopping cart, and opened the trunk of her car to load the groceries. As she was loading her groceries, she noticed a man walking north near the front corner of the store. He was approximately fifteen feet away from Plonski.

The man asked Plonski, "What's going on?" and looked toward her purse in the cart. Appellant's Appendix at 19. Plonski responded, "Nothing," and the man started running toward her. *Id.* Plonski grabbed her purse and started running toward the front of the store, but the man grabbed her before she was able to get away from her car. The man repeatedly punched Plonski and tried to take her purse. He put his hand around her mouth so that she could not yell for help. He then picked her up and threw her into the trunk of her car. Plonski let go of her purse and kicked the man, but he started screaming at Plonski to give him her car keys. When she refused, he repeatedly slammed the trunk lid down on her leg. When the man looked away momentarily, Plonski escaped from the trunk and ran into the store.

Plonski filed a complaint against Kroger, and on March 26, 2007, Kroger filed a motion for summary judgment. In support of its motion for summary judgment, Kroger designated various photographs, affidavits of Ron Seay, Melissa Miller, and Gloria Andrews, and portions of depositions of Plonski and her husband, Andrzej Plonski. Kroger argued that it did not have a duty to protect Plonski from a criminal act of a third party who was not a guest or patron of the store, that, even if it had a duty to Plonski, it did not breach that duty, and that it was not the proximate cause of Plonski's injuries.

Ron Seay's affidavit provided that the store was "located in an area that has a reputation for being a safe part of the city and has a low frequency of violent criminal activity" and that during the two-year period prior to October 2, 2003, there was only one incident of violent criminal activity, which Seay defined as "any crime against a customer that involves a potential threat of physical harm such as an assault, battery, robbery, purse snatching or car jacking." Appellant's Appendix at 10. Seay described the incident as "an unknown subject attempt[ing] to drive off in a car of a customer who had left the keys in the car." *Id.* Seay's affidavit also provided: "Based on the lack of criminal activity in the store's parking lot, Kroger

had no reason to expect or believe that Ms. Plonski would be the victim of a purse snatching or other type of assault." *Id.*

Melissa Miller's affidavit provided that during the time period from October 1, 2001 to October 3, 2003, "there was only one report of criminal activity on the Store premises that involved a business invitee being the victim of an assault or attempted assault." *Id.* at 37. Miller reported that the incident involved a woman leaving her car keys in her unlocked car while making a night deposit and an unknown man attempting to drive off in the car. Miller further reported that the woman "jumped into the passenger side of her vehicle and struggled with the man before she exited the vehicle." *Id.* The affidavit also provided that the store is located "in a part of the community that has a reputation for relatively low amounts of criminal activity and is not known to be an area where customers are generally subject to violent offenses against their persons." *Id.* at 38.

Gloria Andrews's affidavit provided that, prior to the assault, "there was no person matching the assailant's description inside the store. Upon information and belief, the assailant was not a guest or patron of the Kroger store prior to the assault." *Id.* at 39.

Plonski filed a response to Kroger's motion for summary judgment. Plonski designated her deposition, all exhibits of her deposition, her husband's deposition, various photographs, her response to Kroger's interrogatories, and her complaint. In Plonski's memorandum, she did not cite to specific portions of her designated evidence. Kroger filed a response arguing that Plonski had failed to comply with Ind. Trial Rule 56 by failing to properly designate evidence.

Between the time that Kroger filed its motion for summary judgment and the hearing, Plonski served Kroger with discovery requests, and Kroger provided Plonski with reports of police runs to the Kroger store between October 1, 2001, and October 3, 2003. The reports demonstrated that there had been more than thirty police runs to the Kroger store, including numerous reports of thefts from vehicles in the parking lot, including one where the customer confronted the thief, an indecent exposure incident, an assault on an employee, a hit and run incident, the carjacking mentioned in the affidavits, thefts from the store, check fraud incidents, and prescription fraud incidents.

At the May 28, 2008 hearing, Plonski argued, in part, that Kroger's affidavits should be stricken because they conflicted with the police run reports provided by Kroger in discovery. The trial court refused to allow the police run reports to be designated as part of Plonski's response to Kroger's motion for summary judgment because the time for designating such evidence had passed. However, the trial court allowed Plonski to use the police run reports as an exhibit to her motion to strike. The trial court granted Plonski's motion to strike and "after consideration of the pleadings . . ., all properly designated material and the argument of counsel," the trial court denied Kroger's motion for summary judgment.[1] Appellant's Appendix at 6.

The issue is whether the trial court erred by denying Kroger's motion for summary judgment on Plonski's negligence claim. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is enti-

---

1. Plonski concedes that she did not properly designate evidence in response to Kroger's motion for summary judgment. Appellee's Brief at 14 n. 3. Consequently, only the evidence designated by Kroger is considered in the appeal.

tled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold,* 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

"In order to prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster,* 804 N.E.2d 736, 738 (Ind.2004). In negligence cases, summary judgment is "rarely appropriate." *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.*

Kroger argues that it was entitled to summary judgment because: (1) it had no duty to Plonski; (2) if it had a duty, it did not breach the duty; and (3) Plonski's injuries were not proximately caused by any breach of Kroger's duty. We will address each argument separately.

A. *Duty.*

In general, "[w]hether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law." *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied.* In determining whether a duty exists, the Indiana Supreme Court has held that three factors must be balanced. *Id.* The factors include: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id.*

The duty of a landowner to protect invitees from criminal attacks has been the subject of several Indiana Supreme Court decisions in the past decade. *See Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048 (Ind.2003); *Delta Tau Delta v. Johnson,* 712 N.E.2d 968 (Ind.1999); *Vernon v. Kroger Co.,* 712 N.E.2d 976 (Ind.1999); *L.W. v. Western Golf Ass'n,* 712 N.E.2d 983 (Ind.1999). In *Delta Tau Delta, Vernon,* and *Western Golf,* the Court held that the determination of whether a landowner owed an invitee a duty to take reasonable care to protect the invitee against a third party criminal attack required consideration of the totality of the circumstances to determine whether the criminal act was reasonably foreseeable. *Delta Tau Delta,* 712 N.E.2d at 973; *Vernon,* 712 N.E.2d at 979; *Western Golf,* 712 N.E.2d at 985. This analysis included looking to "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents to determine whether a criminal act was foreseeable." *Delta Tau Delta,* 712 N.E.2d at 972; *Vernon,* 712 N.E.2d at 979; *Western Golf,* 712 N.E.2d at 985. In each case, the Court analyzed the factual totality of the circumstances and determined whether a duty was owed to the invitee. *Delta Tau Delta,* 712 N.E.2d at 973–974; *Vernon,* 712 N.E.2d at 980–981; *Western Golf,* 712 N.E.2d at 985.

However, in *Northern Indiana Pub. Serv. v. Sharp,* 790 N.E.2d 462, 465 (Ind. 2003), the Indiana Supreme Court held that an analysis of the *Webb* factors was not always necessary:

In our view, the three-part balancing test articulated in *Webb,* is a useful tool in determining whether a duty exists, but only in those instances where the element of duty has not already been declared or otherwise articulated. For example, there is no need to apply *Webb* to determine what duty a business owner owes to its invitees. The law in this area is well settled: "[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct." *Muex v. Hindel Bowling Lanes, Inc.,* 596 N.E.2d 263, 266 (Ind.Ct.App.1992).

In other words, the Court held that "an individualized judicial determination of whether a duty exists in a particular case is not necessary where such a duty is well-settled." *Bartolini,* 799 N.E.2d at 1052 (citing *Sharp,* 790 N.E.2d at 465). This conclusion conflicted with the Court's earlier method of determining whether an invitee was owed a duty by analyzing the factual totality of the circumstances of the case in *Delta Tau Delta, Vernon,* and *Western Golf.*

The Court resolved this conflict in *Bartolini.* In that case, a customer was assaulted by underage patrons of the bar in the bar's parking lot. 799 N.E.2d at 1052. The customer brought an action against the bar, and the bar appealed a jury verdict and judgment for the customer. *Id.* at 1051. On appeal, the bar argued, in part, that the trial court should have granted its motion for judgment on the evidence. *Id.* The Indiana Supreme Court noted that "[l]andowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Id.* at 1052 (citing *Delta Tau Delta,* 712 N.E.2d at 973). Additionally, "the duty of a business to exercise reasonable

care extends to keeping its parking lot safe and providing a safe and suitable means of ingress and egress." *Id.* (citing *Vernon,* 712 N.E.2d at 979).

In resolving the conflict between *Sharp* on the one hand and *Delta Tau Delta, Vernon,* and *Western Golf* on the other, the Court held that "there is *usually* no need to redetermine what duty a business owner owes to its invitees because the law clearly recognizes that '[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct.' " *Id.* (quoting *Muex,* 596 N.E.2d at 266) (emphasis added). This duty only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor. *Id.* The Court reasoned:

There is no doubt, however, that reasonable foreseeability is an element of a landowner or business proprietor's duty of reasonable care. The issue is merely at what point and in what manner to evaluate the evidence regarding foreseeability. We believe that *Sharp* provides the better answer. *Where, as in this case, the alleged duty is well-established, there is no need for a new judicial redetermination of duty.* The court's function was merely to adequately inform the jury of the applicable duty, and the jury was then to determine whether the Pub breached this duty of reasonable care to protect its invitees from foreseeable criminal attacks. In ruling upon a motion for judgment on the evidence asserting the absence of a well-settled duty, a trial court need only make a general determination as to whether such duty is generally applicable to the nature of the case presented by the evidence. *In the present case,*

*the well-settled duty was sufficiently established merely by evidence that Bartolini, a customer of the Pub, was beaten in the Pub parking lot as he was leaving.* Upon receiving instructions as to the general nature of the Pub's duty, [ ] the jury was then able to evaluate whether Bartolini's injuries resulted from a criminal attack that was reasonably foreseeable to the Pub and for which it failed to exercise reasonable care.

*Id.* (footnote omitted & emphasis added).

Cases following *Bartolini* have struggled with its application. *See Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266 (Ind.Ct.App.2004); *Winchell v. Guy*, 857 N.E.2d 1024 (Ind.Ct.App.2006). The difficulty here comes from the fact that foreseeability is both a factor in determining duty and a factor in determining breach of duty and proximate cause. *See Webb*, 575 N.E.2d at 995 (holding that the reasonable foreseeability of harm to the person injured is a factor in determining whether a duty exists), and *Bartolini*, 799 N.E.2d at 1053–1055 (discussing foreseeability in terms of breach of duty and proximate cause). *Bartolini* holds that, although foreseeability is an element of duty, there is no need for a judicial redetermination of this duty where "such a duty is generally applicable to the nature of the case presented by the evidence." *Bartolini*, 799 N.E.2d at 1053. The duty in *Bartolini* was "sufficiently established merely by evidence that Bartolini, a customer of the Pub, was beaten in the Pub parking lot as he was leaving." *Id.*

■ Here, the nature of the case is that a patron of the grocery store was assaulted in the grocery store's parking lot as she was leaving. Citing selective portions of *Bartolini* and other cases, Kroger argues that the "well-established" duty applies only where the patron's injuries are caused by another patron or guest of the landowner, not as here where the injuries are caused by a stranger. We find Kroger's argument unpersuasive. In *Bartolini*, the status of the person committing the criminal act was not a factor in determining whether a duty existed. While the status of the person committing the criminal act may be a consideration in determining breach of duty or proximate cause, we conclude that the criminal's status is not a determinative factor in the duty analysis.

■ Given the Indiana Supreme Court's holding in *Bartolini*, we conclude that there is no need for a judicial redetermination of the duty here. Kroger's duty was sufficiently established merely by evidence that Plonski, a patron of the grocery store, was assaulted in the grocery store's parking lot as she was leaving. *See, e.g., Bartolini*, 799 N.E.2d at 1053; *Winchell*, 857 N.E.2d at 1029 (holding that the restaurant owed its customers a duty to use reasonable care to protect them from the criminal acts of third parties).

## B. *Breach of Duty.*

■ Kroger also argues that it was entitled to summary judgment on the breach of duty element of negligence. As noted in *Bartolini*, "[l]andowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Bartolini*, 799 N.E.2d at 1052. "Whether a particular act or omission is a breach of duty is generally a question of fact for the jury." *Sharp*, 790 N.E.2d at 466. "It can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *Id.*

■■ Under the totality of the circumstances test, a court considers "all of the circumstances surrounding an event, including the nature, condition, and location

of the land, as well as prior similar incidents, to determine whether a criminal act was foreseeable." *Delta Tau Delta,* 712 N.E.2d at 972. However, "the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." *Id.* at 973.

Kroger argues that the trial court should not have stricken its affidavits regarding crime in the area and police runs to the grocery store. However, we need not determine whether the trial court abused its discretion by striking those affidavits because, even if we consider those affidavits, we conclude that Kroger was not entitled to summary judgment.[2]

Kroger's designated evidence shows that Plonski had been to the store many times. Plonski was aware that she could have asked for assistance from a clerk with loading her groceries in her vehicle. Plonski was also aware of security cameras on the top of the building and inside the front door. No evidence was designated as to whether security cameras would have seen the attack on the side of the building or whether anyone was monitoring the security cameras. Plonski argues that a dispute exists as to whether the security cameras were taping. Finally, Kroger's affidavits demonstrate that a carjacking occurred in the parking lot a year before Plonski's assault. Although Kroger attempts in its statement of the facts to minimize the assault on Plonski, the designated evidence clearly demonstrates that, while the assault may have started as a purse snatching, it rapidly escalated to an attempted carjacking.

We conclude that the designated facts "do not provide a clear answer as a matter of law" as to breach of duty. *Rhodes,* 805 N.E.2d at 388. Although a jury may very well find that Kroger exercised reasonable care, we cannot conclude that only a single inference can be drawn from these facts so as to render the question of breach a question of law. *See, e.g., Winchell,* 857 N.E.2d at 1030.

## C. *Proximate Cause.*

 Finally, Kroger also argues that it was entitled to summary judgment based upon the proximate cause element. "A negligent act is said to be the proximate cause of an injury 'if the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated.'" *Bartolini,* 799 N.E.2d at 1054 (quoting *Bader v. Johnson,* 732 N.E.2d 1212, 1218 (Ind. 2000)). "At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct." *Id.* "[L]iability may not be imposed on an original negligent actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omission." *Id.* (quoting *Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 108 (Ind.2002)). The question of proximate cause is one usually left to the jury. *Rhodes,* 805 N.E.2d at 388. "Only in plain and indisputable cases, where only a single

---

**2.** Kroger argues that it "appeals the ruling on the motion to strike only in the unlikely event that the court on appeal finds that Kroger had an affirmative duty to designate evidence of prior similar incidents or a lack thereof in support of its motion for summary judgment." Appellant's Brief at 29. It appears that the trial court struck the affidavits in their entirety. Without the affidavits, there was no evidence whatsoever regarding the foreseeability of the assault, and Kroger failed to meet its initial burden of demonstrating that it was entitled to summary judgment. Even if we consider the affidavits in their entirety, Kroger has failed to demonstrate that only a single inference can be drawn from the facts so as to render the question of breach or proximate cause a question of law.

inference or conclusion can be drawn, are the questions of proximate cause and intervening cause matters of law to be determined by the court." *Peters*, 804 N.E.2d at 743.

Again, we cannot conclude that the designated evidence, as discussed above, leads to only a single inference so as to render the question of proximate cause a question of law. As above, although a jury may very well find that Kroger's actions were not a proximate cause of Plonski's injuries, we cannot say that Kroger was entitled to summary judgment on the proximate cause element. *See, e.g., Winchell*, 857 N.E.2d at 1030. In summary, we conclude that the trial court properly denied Kroger's motion for summary judgment.

For the foregoing reasons, we affirm the trial court's denial of Kroger's motion for summary judgment.

Affirmed.

CRONE, J. and BRADFORD, J., concur.