

ATTORNEYS FOR APPELLANT

L. Charles Lukmann III
Harris Welsh & Lukmann
Chesterton, Indiana

Brian W. Welch
Karl L. Mulvaney
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Larry G. Evans
Lauren K. Kroeger
Hoeppner Wagner & Evans, LLP
Valparaiso, Indiana

David K. Herzog
Brian J. Paul
Anne K. Ricchiuto
Faegre Baker Daniels, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Constantinos P. Angelopoulos, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Theodore P. Angelopoulos, <br> Neptunia Inc., Transmar Corp., <br> Didiac Establishment, Beta Steel <br> Corp., and Top Gun Investment <br> Corp. II, <br> *Appellees-Defendants.* | April 19, 2017 <br><br> Court of Appeals Case No. <br> 64A03-1603-PL-518 <br><br> Appeal from the Porter Superior <br> Court <br><br> The Honorable Mary R. Harper, <br> Judge <br><br> Trial Court Cause No. <br> 64D05-0811-PL-10838 |

**Mathias, Judge.**

On remand from this court, the Porter Superior Court issued an order denying the motion of Constantinos P. Angelopoulos ("Constantinos") seeking to modify a protective order preventing him from using certain materials obtained during discovery and designated as confidential by Appellees-Defendants Beta Steel Corp. ("Beta Steel") and Top Gun Investments Corp. II ("Top Gun") under the protective order, in future litigation in Greece between Constantinos and his brother Theodore P. Angelopoulos ("Theodore"). The trial court's order also concluded that, pursuant to Administrative Rule 9, portions of Theodore's deposition testimony should be excluded from the public record. Constantinos appeals and presents two issues, which we reorder and restate as (1) whether the trial court erred under Administrative Rule 9 by excluding from the public record portions of Theodore's deposition testimony, and (2) whether the trial court abused its discretion by failing to modify the protective order.

We affirm.

## Facts and Procedural History

This is the second time this case has come before this court on appeal. As explained in the first appeal, brothers Constantinos and Theodore are Greek citizens who live in Greece.[1] *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 692

---

[1] The fact that both brothers are Greek, and not U.S., citizens explains why this case was not heard in federal court. It has long been held that federal courts lack jurisdiction under 28 U.S.C. § 1332 if foreign parties are on both sides of the dispute. *See, e.g., U.S. Motors v. Gen. Motors Europe*, 551 F.3d 420, 423 (6th Cir. 2008) (noting that diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants and that even the presence of a U.S. citizen on one side of the dispute does not confer jurisdiction); *see also* 14A Fed. Prac. & Proc. Juris. § 3661, *Actions Involving Aliens—General Principles*, (4th ed. 2017) (noting that if both the

(Ind. Ct. App. 2013), *trans. denied*. The brothers are the sons of Panayiotis Angelopoulos ("Panayiotis"), who, along with his late brothers, founded several companies that owned the assets of the brothers' combined business activities. *Id*. Panayiotis died intestate in 2001, leaving a substantial estate. *Id*. Pursuant to Greek intestacy laws, Panayiotis's widow was entitled to two-eighths of the estate, and his two sons, Constantinos and Theodore, were each entitled to three-eighths of the estate. *Id*. Constantinos believed that one of his father's companies, Beta Steel,[2] belonged in his father's estate and that he was therefore entitled to three-eighths[3] of Beta Steel.[4] *Id*. Theodore claimed, and various Greek courts ultimately agreed, that Panayiotis had, acting *inter vivos,* transferred ownership of Beta Steel to Theodore.[5] *Id*.

[4] Undeterred by his lack of success in Greece, in 2008, Constantinos filed a claim in Porter Superior Court again claiming that he had a three-eighths interest in Beta Steel under Greek inheritance laws. During the discovery process, the parties entered into an agreed protective order ("the Protective Order"), which

---

plaintiff and the defendant are aliens it is well settled that 28 U.S.C. § 1332 does not apply and there is no alienage jurisdiction).

[2] As explained in the earlier appeal, Beta Steel's main facility is in Portage, Indiana. Beta Steel was legally owned by three companies: Neptunia, a Liberian corporation; Transmar, also a Liberian corporation; and Didiac, a Liechtenstein-based foundation. *Id*.

[3] Based on the price of $350,000,000 for which Beta Steel was later sold, three-eighths of Beta Steel was worth $131,250,000. *Id*. at 694 n.3.

[4] Constantinos first tried to claim a portion of Beta Steel prior to his Father's death. *Id*.

[5] The Greek courts also found that Panayiotis transferred, *inter vivos,* ownership of another company, Alpha Steel, to Constantinos. *Id*. at 693.

the trial court approved of and entered. This Protective Order provided that some of the documents subject to discovery would contain "trade secrets or other confidential research, development or commercial information described in Rule 26(C) of the Indiana Rules of Trial Procedure." Pursuant to the Protective Order, the parties could designate certain documents as confidential and could only be disclosed to (1) the parties, (2) the trial court, (3) U.S. and Greek counsel for the parties, (4) experts retained by the parties, (5) employees or representatives of the parties responsible for the conduct of the case, (6) court reporters and/or stenographers, as necessary, (7) a deponent or witness, and (8) such persons as the parties might stipulate. The Protective Order provided that, subject to one exception, the confidential information produced during discovery could be used "solely for the purposes of this action." Appellant's App. p. 34. The one exception was that, "[u]pon approval by the [trial] Court, Confidential Information may be used or disclosed in other judicial or investigative proceedings involving any of the parties or the location and/or disposition of assets of the estate of [Panayiotis Angelopoulos.]" *Id.*

[5] Constantinos subsequently deposed Theodore, and Theodore's counsel designated several portions of the deposition as confidential. *Id.* at 695. Constantinos then filed a motion to initiate an Administrative Rule 9(H) proceeding in which he claimed that Theodore's deposition should be made public. *Id.* The trial court denied this motion after a hearing. *Id.*

[6] The defendants then filed motions to dismiss Constantinos's claims. Constantinos filed a response to these motions to dismiss, designating as

evidence the entirety of both of Theodore's depositions. The trial court granted the defendants' motions to dismiss, concluding that the earlier Greek court decisions should be afforded comity and that these prior decisions acted as *res judicata* to bar Constantinos's current claims.[6] *Id*. at 695. Constantinos appealed.

[7] On appeal, this court affirmed the trial court's order dismissing Constantinos's complaint, holding that the prior rulings of the Greek courts conclusively established that Theodore is the sole owner of Beta Steel and that, on grounds of *res judicata* and comity, this matter could not be relitigated in Indiana.[7] *Id*. at 698. We also concluded, however, that the trial court erred by conflating the issue of confidentiality for purposes of discovery with the issue of restricting public access to materials filed in court. *Id*. at 701. We therefore reversed the trial court's order regarding public access to Theodore's depositions and remanded with instructions that the trial court hold a hearing at which Theodore would have to prove by clear and convincing evidence that portions of his depositions should not be open to public access pursuant to Indiana Administrative Rule 9. *Id*. (citing *Travelers Casualty & Surety Co. v. U.S. Filter Corp.*, 895 N.E.2d 114 (Ind. 2008)).

---

[6] The trial court also concluded in the alternative that Constantinos's claims should be dismissed on the grounds of *forum non conveniens*. *Id*.

[7] Because we affirmed the trial court's judgment on grounds of *res judicata* and comity, we did not reach the issue of whether the trial court's dismissal could also be justified on the alternate grounds of *forum non conveniens*.

[8]     On remand, Constantinos filed, on December 4, 2014, a motion to modify the Protective Order, seeking permission to use the discovery materials that had previously been designated as confidential in any pending or future action between Constantinos and Theodore in Greece. Thus, unlike the Administrative Rule 9 issue before this court in the first appeal, which involved only portions of Theodore's deposition testimony, Constantinos's motion to modify the Protective Order requested permission to use in future litigation *all* the materials previously designated as confidential. On June 10, 2015, Theodore filed a petition requesting that the trial court exclude certain portions of his deposition from the public record under Administrative Rule 9.[8]

[9]     On September 14, 2015, the trial court held a hearing on the Administrative Rule 9 issue. At this hearing, Theodore presented evidence that information regarding his business transactions and his personal fortune would increase the risk of kidnapping and terrorist attacks against him and his family. Theodore presented evidence that his uncle had been assassinated by a terrorist group in Athens in 1986. He also presented evidence that he and his wife were public figures in Greece. Indeed, his wife had been a member of the Greek parliament, was president of the organizational committee for the 2004 Athens Olympic Games, and is currently an ambassador-at-large for Greece. Theodore also presented evidence that the economic and political situation in Greece was

---

[8] This petition does not seem to have been necessary, as this court had already instructed the trial court on remand to hold a hearing on whether certain portions of Theodore's deposition testimony should remain sealed or become accessible to the public.

unstable and that kidnappings and ransom demands had increased. Thus, Theodore argued that publicizing the details of his sale of Beta Steel would increase the threats against him and his family. At the conclusion of the hearing, the trial court took the matter under advisement. Two weeks later, on September 28, 2015, the trial court held a hearing on Constantinos's motion to modify the Protective Order. At this hearing, no witnesses testified, and no evidence was admitted. The trial court also took this matter under advisement.

[10]   On February 12, 2016, the trial court issued an order on both matters. The court denied Constantinos's motion to modify the Protective Order, reasoning that the issue of the ownership of Beta Steel had been conclusively decided and could not be relitigated in Indiana. Therefore, "If [Constantinos] wishes to introduce materials subject to the Order in a Greek proceeding, he must do so pursuant to the procedures set forth in Greece." Appellant's App. p. 27. With regard to the Administrative Rule 9 issue, the trial court determined that Theodore had adequately proven that the release of the confidential portions of Theodore's deposition would pose a threat to the safety of Theodore and his family, that the deposition testimony contained trade secrets and financial information that could affect future business dealings between the brothers, and that Constantinos had failed to explain why the deposition should be public despite these concerns. Constantinos now appeals this order as to both issues.

## I. Theodore's Deposition Should Remain Confidential

[11]   Constantinos claims that the trial court erred in concluding that portions of Theodore's deposition testimony should remain confidential and not become

part of the public record pursuant to Administrative Rule 9. As noted above, in our earlier opinion, we reversed the trial court's order regarding public access to Theodore's depositions and remanded with instructions that the trial court hold a hearing at which Theodore would have to prove by clear and convincing evidence that portions of his depositions should not be open to public access pursuant to Indiana Administrative Rule 9. *Angelopoulos*, 2 N.E.3d at 701. (citing *Travelers*, 895 N.E.2d at 115-16).

[12] On remand, the trial court held such a hearing at which Theodore produced evidence supporting his position that certain portions of his deposition testimony should remain confidential and not be open to public access. The trial court then issued the order now on appeal, concluding that Theodore had met his burden of establishing that portions of Theodore's deposition testimony should remain confidential.

### A. Standard of Review

[13] Constantinos argues that we should review the trial court's ruling on this matter *de novo*. Theodore argues that we should apply an abuse of discretion standard. To the extent that our review requires us to construe the language of Administrative Rule 9, we will apply a *de novo* standard of review. *See In re T.B.*, 895 N.E.2d 321, 332 (Ind. Ct. App. 2008) (noting that trial court's interpretation of Administrative Rule 9 would be reviewed *de novo*). However, to the extent that our review requires us to review the trial court's factual determinations, we will apply a clearly erroneous standard. *See Daisy Farm Ltd. P'ship v. Morrolf*, 886 N.E.2d 604, 606 (Ind. Ct. App. 2008) (noting that a trial

court's factual findings are reviewed for clear error), *trans. denied*. To the extent that our review requires us to consider mixed questions of fact and law, we review for an abuse of discretion. *Id.*; *see also Fraley v. Minger*, 829 N.E.2d 476, 483 (Ind. 2005) (where burden of proof was by clear and convincing evidence, court on appeal will review for an abuse of discretion).

*B. Public Access to Theodore's Deposition Testimony*

[14]     As noted in our earlier opinion, "even if a trial court has ordered certain materials to be deemed confidential for purposes of discovery, these materials will still be subject to public access unless the trial court complies with Administrative Rule 9(H)." *Angelopoulos*, 2 N.E.3d at 700. Here, Theodore's deposition testimony would become part of the public record pursuant to Administrative Rule 9 because it was offered as evidence in support of Constantinos's opposition to the defendants' motion to dismiss. *See id.* at 699 (noting that materials designated as confidential for purposes of discovery may still become part of the public record if submitted to a court) (citing *Travelers*, 895 N.E.2d at 115-16).

[15]     At the time of our earlier opinion, Administrative Rule 9(H) provided that a person affected by the release of information to the public could file a verified, written request to prohibit public access to a court record. *See* Ind. Administrative Rule 9(H) (2013). The request had to demonstrate one of four reasons for prohibiting public access: "(a) The public interest will be substantially served by prohibiting access," "(b) Access or dissemination of the information will create a significant risk of substantial harm to the requestor,

other persons[,] or the public," "(c) A substantial prejudicial effect to on-going proceedings cannot be avoided without prohibiting public access," or "(d) The information should have been excluded from public access under section (G) of this rule." *Id.*, Rule 9(H)(1). As noted in our prior opinion, the person seeking to prohibit access had the burden of proving at an evidentiary hearing one of these requirements by clear and convincing evidence. *Id.*, Rule 9(H)(2). Thus, we remanded with instructions that the trial court hold such a hearing at which Theodore would bear the burden of proving by clear and convincing evidence that portions of his depositions, which were submitted by Constantinos to the court in opposition to Theodore's motion to dismiss, should not be available for public access. *Angelopoulos*, 2 N.E.3d at 701. Administrative Rule 9 has since been amended, but the relevant provisions, although moved to another subsection of the rule, remain substantially the same.[9] Constantinos claims that

---

[9] Administrative Rule 9(G)(4)(a) now provides:

> (4) Excluding Other Court Records From Public Access. In extraordinary circumstances, a Court Record that otherwise would be publicly accessible may be excluded from Public Access by a Court having jurisdiction over the record, provided that each of the following four requirements is met:
> (a) Verified written request. A verified written request to prohibit Public Access to a Court Record may be made by any person affected by the release of the Court Record. The request must demonstrate that:
>    (i) The public interest will be substantially served by prohibiting access; or
>    (ii) Access or dissemination of the Court Record will create a significant risk of substantial harm to the requestor, other persons[,] or the general public; or
>    (iii) A substantial prejudicial effect to ongoing proceedings cannot be avoided without prohibiting Public Access.

Ind. Administrative Rule 9(G)(4)(a) (2017). As before, the burden is on the requesting party to prove by clear and convincing evidence that one of these requirements has been satisfied. *Id.*, Rule 9(G)(4)(d)(ii).

the trial court erred in determining that Theodore had met his burden under this rule. We disagree.

[16] The trial court heard evidence that the release of information regarding Theodore's financial transactions, including the sale of Beta Steel, could have serious repercussions in his native Greece, including an increased risk of criminal and terroristic attacks such as kidnapping and ransom. Although Theodore and his family are already public figures in Greece, there was evidence before the court that renewed publicity of his financial dealings would increase the risk to Theodore and his family, especially given the still-unstable economic situation in Greece. This was not merely the opinion of Theodore himself, but that of Vassilios Konstantinidis, a retired Lieutenant General of the Greek Police. Mr. Konstantinidis served in the Greek Police for over thirty years and served as the director of security for the 2004 Olympic Games in Athens.

[17] From this evidence, the trial court could reasonably conclude that Theodore had met his burden of showing that the release of his deposition testimony would create a significant risk of substantial harm to Theodore and his family. Accordingly, the trial court properly concluded that the relevant portions of Constantinos's depositions should not be made part of the public record.

## II. *The Trial Court Acted Within Its Discretion by Denying the Request to Modify the Agreed Protective Order*

[18]   Constantinos also argues that the trial court erred in denying his motion to modify the Protective Order, in which he sought to be able to use in Greek courts *all* of the materials that had been previously designated as confidential by the defendants but not submitted to the trial court as evidence.[10]

### A. Standard of Review

[19]   Trial courts are afforded broad discretion in ruling on issues of discovery, which includes protective orders. *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 321, 324 (Ind. Ct. App. 2006) (citing *Vernon v. The Kroger Co.*, 712 N.E.2d 976, 982 (Ind. 1999)). On appeal, we will reverse the trial court only upon a showing that the trial court abused this discretion. *Id*. That is, we will reverse the trial court's ruling on a discovery matter only if the court's decision is clearly against the logic and natural inferences to be drawn from the facts and circumstances before the court. *Id*. On appeal, we will not reweigh the evidence or assess the credibility of witnesses. *Id*. Instead, we simply determine whether the evidence and circumstances before the court served as a rational basis for the trial court's decision. *Id*.

---

[10] Had these items been submitted as evidence, the presumption would have been that they were subject to public access and the burden would have been on the party seeking to exclude the items from public access to demonstrate why they should be so excluded. *See Angelopoulos*, 2 N.E.3d at 700.

[20] We note that Constantinos agreed to the Protective Order and made no claim that the confidential materials at issue were improperly designated as confidential by the parties.[11] Thus, when he filed his motion to modify the Protective Order, it was Constantinos's burden to show why the Protective Order should be modified. *See* 20 Ind. Law Encyc. Motions and Orders § 6 (2017 Update) ("At a hearing on a motion, the burden of proof ordinarily rests with the moving party."); 56 Am. Jur. 2d Motions, Rules, and Orders § 35 (2017 Update) ("[T]he burden of proof regarding a motion is on the movant.").

### B. Trial Court Approval of Use of Confidential Information

[21] Constantinos first argues that the Protective Order itself contemplated the use of the confidential information in other venues. Specifically, he notes that the Protective Order provides that, "[u]pon approval of the [trial] court, Confidential Information may be used or disclosed in other judicial or investigative proceedings involving any of the parties or the location and/or disposition of assets of the estate of [Panayiotis Angelopoulos][.]" Appellant's App. p. 34. However, this provision provides little support for Constantinos; it does not state that confidential information can be used in other proceedings without restriction. To the contrary, it says that confidential information may be used in other proceedings, *if such use is approved by the trial court*. The very

---

[11] The materials at issue were designated as confidential by Theodore's co-defendants. However, we do not consider this to be relevant. Indeed, we fail to see why Theodore should be required to designate as confidential what his co-defendants had already designated as confidential.

issue before us is whether the trial court abused its discretion in denying such approval.

### C. The Existence of Litigation Between the Brothers in Greece

[22] Constantinos argues that the trial court's order is erroneous to the extent that it is based on the trial court's belief that there was no current litigation pending between him and Theodore in Greece. Constantinos specifically refers to the portion of the trial court's order that states that he "has failed to establish specific matters about which [Constantinos] and [Theodore] may engage in future Greek legal disputes," and that Constantinos's legal arguments were inapplicable "if there were claims left to be decided." Appellant's App. pp. 27-28. Constantinos notes that there was evidence that Theodore had filed an action against him in Greece, seeking substantial damages arising from their dispute over their late father's estate. In fact, the trial court itself noted this litigation in its order. *See* Appellant's App. p. 25 n.2.

[23] Since the trial court itself recognized the existence of this pending litigation in Greece, we are not inclined to think that the trial court somehow believed that there was no litigation between the brothers. Instead, when the trial court stated that there were no claims "left to be decided," we believe that the trial court was referring to the claims regarding the ownership of Beta Steel. Indeed, as far as Indiana courts are concerned, the issue of the ownership of Beta Steel has been conclusively decided, and there is nothing left to litigate regarding this matter. *See Angelopoulos*, 2 N.E.3d at 697-98.

[24] Still, Constantinos claims that, although the issue of the ownership of Beta Steel has been finally decided in Indiana courts, it has not been finally decided in Greek courts. However, this position contradicts what we held in *Angelopoulos*, that the very reason that the issue of ownership of Beta Steel could not be relitigated in Indiana was that the Greek courts had already made a final decision regarding ownership of Beta Steel, and we afforded this decision comity. *See Angelopoulos*, 2 N.E.3d at 697-98. The fact that there may yet be grounds to attack the prior decisions of the Greek courts in Greece does not mean that *in Indiana* there remains a dispute regarding the ownership of Beta Steel. The Indiana decision is final.

[25] Constantinos admits this much, yet still he claims that the trial court should have modified the Protective Order to permit him to use the confidential materials in any future litigation in Greece. We note that these materials were designated as confidential pursuant to the agreed Protective Order. Yet Constantinos presented no admissible evidence in support of his motion to modify the Protective Order. Given the evidence before the trial court that release of personal information regarding Theodore and his family could lead to an increased risk of crime and terrorism against the family, we cannot say that the trial court abused its discretion in denying Constantinos's motion to modify the protective order. Indeed, Constantinos merely desires to use Indiana's generous discovery process to discover information that would apparently not be permitted in Greece and be allowed to use these materials in Greece. Unless and until a Greek court decides that such materials would be admissible in the

proceedings before the Greek court, a decision to which our courts would afford comity, we cannot say that the trial court abused its discretion by declining Constantinos's request to modify the protective order.

# Conclusion

The trial court did not abuse its discretion when it found that Theodore had met his burden of establishing, by clear and convincing evidence, that the portions of his deposition previously designated as confidential, but submitted in court, should be part of the public record. Nor did the trial court abuse its discretion when it denied Constantinos's motion to modify the Protective Order to permit Constantinos to use, in Greek litigation, the discovery materials designated as confidential discovery in the Indiana action.

Affirmed.

Baker, J., and Pyle, J., concur.