**ALLSTATE INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Tim L. SCROGHAN, Appellee–Plaintiff.**

No. 03A04–0410–CV–554.

Court of Appeals of Indiana.

July 25, 2006.

Rehearing Denied Oct. 19, 2006.

Karl L. Mulvaney, Nana Quay-Smith, Bingham McHale, LLP, Mark R. Smith, Kimberly E. Howard, Smith Fisher Maas & Howard, P.C., Indianapolis, IN, Ronald D. Getchey, Luce, Forward, Hamilton & Scripps LLP, San Diego, CA, Attorneys for Appellant.

Richard Eynon, David M. Brinley, Landyn K. Harmon, Enyon Harmon & Brinley, P.C., Columbus, IN, William F. Merlin, Jr., The Merlin Group, Tampa, FL, Attorneys for Appellee.

John B. Drummy, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Amicus Curiae The Insurance Institute of Indiana.

## OPINION

KIRSCH, Chief Judge.

Allstate Insurance Company ("Allstate") appeals the trial court's imposition of sanctions for its violation of a discovery order and for its failure to properly designate its Ind. Trial Rule 30(B)(6) representatives. On appeal, Allstate raises the following restated issues:

I.  Whether this court has jurisdiction to review the propriety of the trial court's Order Regarding Scroghan's Motion to Compel Discovery Which Was Filed on July 31, 2002 (the "Discovery Order").

II.  Whether the discovery sought by Scroghan is relevant to his bad faith claim.

III.  Whether the discovery is unduly burdensome, such that it violates Allstate's right to due process (or at least requires some sort of equitable discovery limit).

IV.  Whether the information sought by Scroghan through discovery should be considered trade secrets, confidential or proprietary, thus warranting a protective order.

V.  Whether the trial court was correct in sanctioning Allstate for violating the Discovery Order and for failing to properly designate its T.R. 30(B)(6) representatives.

We affirm in part and reverse in part.[1]

## FACTS AND PROCEDURAL HISTORY

This appeal involves a hotly contested battle over discovery sought in the course of a bad faith claim brought against All-

state for allegedly refusing or delaying payment on an uninsured motorist claim. Tim L. Scroghan brought the bad faith claim (along with breach of contract and punitive damages claims) after being injured in an automobile accident on October 10, 1997. At the time of the accident, Scroghan was insured by Allstate. His policy provided for coverage of property damage, medical payments, uninsured motorist, and bodily injury with a limit on liability of $50,000 per person. The trial court bifurcated Scroghan's claims into two trials—one on the breach of contract claim and one on the bad faith and punitive damages claims. This appeal covers only the discovery pursued in the latter case.

Following the conclusion of the case involving the breach of contract claim, Scroghan served Allstate with his first Request for Production ("RFP"), which encompassed requests for

The entire paper and electronic claim files ([Requests] 1, 12, 13, 16 & 38); all documents relating to computer programs utilized by Allstate in evaluating/processing [Scroghan's] claims including, but not limited to, Colossus/CSC, ADP and MBRS documents ([Request] 30); all documents relating/evidencing Allstate's design to control claim costs, e.g. McKinsey & Company documents ([Request] 21); all documents pertaining to employment compensation information on the Allstate's adjusters and supervisors handling [Scroghan's] claims, including Performance Development Summaries ("PDS") ([Request] 14); all salary/compensation and personnel manuals/documents relating to performance and compensation ([Request] 15); all training materials, including manuals (

---

1.  We held oral argument on this case on January 24, 2006 at the Krannert Graduate School of Management at Purdue University. We commend counsel on the quality of their oral and written advocacy, and we thank our host for its hospitality.

[Request] 22); all publication and newsletters ([Request] 24); all organizational documents ([Request] 32); all documents pertaining to archives and records storage/retention ([Request] 35); all documents relating to prior bad faith claims and lawsuits filed against Allstate ([Request] 6); and all documents pertaining to prior depositions and affidavits in bad faith litigation against Allstate ([Request] 43). *Appellant's Reply in Support of Motion to Accept Jurisdiction of Interlocutory Appeal, Ex. 8* at 1–2. After receiving this RFP, Allstate moved for a protective order, which was denied by the trial court on April 23, 2002 on the grounds that Allstate's motion was "general in nature and did not make an attempt to show what items should be held as confidential...." *Appellant's App.* at 926. On May 6, 2002, Allstate responded to Scroghan's RFP by producing some responsive documents and also objecting to some of the requests on the grounds of relevance or by claiming attorney-client privilege or work product. *Id.* at 343–89. Scroghan then moved to compel discovery, and a hearing was held on the motion on February 18, 2003.

On February 26, 2003, the trial court issued its Discovery Order, finding that "Allstate has been stonewalling Scroghan as it relates to the production of documents requested." *Id.* at 928. The court also determined that Scroghan's RFP requests 6 and 43[2] were unduly burdensome and, therefore, limited the scope of the requests to those documents relating to Indiana uninsured motorist claims against Allstate, which alleged bad faith from 1994 through 1997. The court further ordered Allstate to provide the documents that it was claiming to be privileged to the court for an *in camera* review. The court also denied Allstate's renewed motion for a protective order.

Allstate requested that the court stay enforcement of its Discovery Order and reconsider the denial of its protective order, both of which were denied on March 27, 2003. Allstate filed a Notice of Appeal on the same day, along with a Motion for Certification of Interlocutory Appeal of the Discovery Order. Both were denied.[3] Allstate served its responses to Scroghan's first RFP as ordered by the trial court in the Discovery Order. However, Allstate continued to refuse to produce certain documents responsive to the RFP, stating,

> Allstate reiterates its objection to the production of these documents based on its position that such production should be made only pursuant to a Protective Order ... Allstate will defer production of such protected documents that it believes should be protected by the request for a protective order until it has exhausted all avenues of appeal.

*Id.* at 1335. This response prompted Scroghan to file another Motion to Compel regarding the first RFP and to also file a Motion for Sanctions.

---

2. Specifically, Scroghan's request 6 sought: "All documents relating to bad faith claims or lawsuits filed against defendant, Allstate Insurance Company, arising out of uninsured claims initiated by Allstate's own insureds since 1990." *Appellant's App.* at 930. Request 43 sought: "All documents pertaining to prior depositions and affidavits, including bad faith claim litigation, since 1990 of Allstate's: (a) Adjusters and supervisors; and (b) Company officers." *Id.*

3. Allstate attempted to pursue its appeal of the Discovery Order even after the trial court's denial of its motion for an interlocutory appeal. This appeal was ultimately dismissed due to a lack of jurisdiction. *Allstate Ins. Co. v. Scroghan,* 801 N.E.2d 191 (2004), *trans. denied.*

On April 21, 2003, Scroghan filed another Motion to Compel, this time in regards to Allstate's responses to his third set of interrogatories. Specifically, Scroghan requested that the court compel Allstate to designate its T.R. 30(B)(6) corporate representatives with the most knowledge regarding thirty-two specified areas of inquiry.

On May 28, 2003, we stayed enforcement of the Discovery Order pending Allstate's appeal. This, however, did not stem the flow of filings before the trial court. During the stay, Scroghan continued to request documents and send interrogatories, and Allstate continued to refuse to answer and to object to his requests on various grounds. More significantly, also during the stay, the trial court appointed a Special Master,[4] pursuant to T.R. 53, for the sole purpose of sorting through the numerous discovery disputes. The Special Master held several hearings on discovery, but did not make final recommendations due to the stay.

Once the appeal was dismissed and our Supreme Court denied transfer, the Special Master again held a two-day hearing on Scroghan's various motions to compel regarding his fifth, sixth, and seventh RFPs and his fifth and sixth sets of interrogatories, as well as on Allstate's motion to reconsider and its motion for a protective order, and finally, *in camera* production. Following the hearing, the Special Master issued a series of recommendations to the trial court regarding the various issues. The trial court adopted those findings in their entirety and issued several orders based on the Special Master's recommendations. The court sanctioned All-

state and ordered it to pay $3,500 for failing to comply with the trial court's order that it appropriately designate its T.R. 30(B)(6) representatives without evasion or ambiguity. The court ordered Allstate to produce documents responsive to Scroghan's fifth, sixth, and seventh RFPs and to respond to Scroghan's fifth and sixth sets of interrogatories without protective orders. Finally, the court dismissed Allstate's motion to again reconsider its ruling on the Discovery Order and sanctioned Allstate and ordered it to pay $10,000 for failing to comply with the Discovery Order. There were also several orders issued after the Special Master's *in camera* review of certain documents, which were determined to be privileged or trade secrets.

Allstate then appealed the trial court's order sanctioning it under Ind. Appellate Rule 14(A), which allows an interlocutory appeal as of right of orders requiring the payment of money. Additionally, Allstate requested that the trial court certify the discovery orders issued on September 20, 2004, which address Scroghan's fifth, sixth and seventh RFPs (the "RFP Orders") and to his fifth and sixth sets of interrogatories (the "Interrogatory Order") and Allstate's request for a protective order. The trial court certified all requested interlocutory orders for appeal, and we accepted jurisdiction.

**DISCUSSION AND DECISION**

■ A trial court is accorded broad discretion in ruling on issues of discovery, and an appellate court will interfere only when the appealing party can show an abuse of that discretion. *Vernon v. The*

---

4. The trial court appointed the Honorable John L. Price as Special Master. Judge Price died on October 29, 2005, following a long and distinguished career as judge, lawyer, teacher and community leader. His integrity, humanity, intellect and humor will be missed by his colleagues in the bench and bar and by the citizenry of this State. All here join us in commemorating a life well-lived.

*Kroger Co.,* 712 N.E.2d 976, 982 (Ind.1999). A trial court is also accorded broad discretion in determining appropriate sanctions for a party failing to comply with a trial court's discovery order. *Id.* A ruling will be reversed only when the trial court reached a conclusion against the logic and natural inferences to be drawn from the facts and circumstances before the court. *Burr v. United Farm Bureau Mut. Ins. Co.,* 560 N.E.2d 1250, 1253–54 (Ind.Ct.App. 1990). The reviewing court determines whether the evidence serves as a rational basis for the trial court's decision but may not reweigh the evidence or assess the credibility of witnesses. *Id.*

## I. Jurisdiction

■ Through its appeal of the trial court's imposition of sanctions, Allstate also requests that we review the underlying Discovery Order. Scroghan contends that we do not have jurisdiction to review the Discovery Order because the trial court refused to certify it for interlocutory appeal. He further argues that we should not consider the Discovery Order because Allstate intentionally engaged in misconduct, i.e., failing to comply with the trial court's Discovery Order in the hopes of being monetarily sanctioned, thus allowing an interlocutory appeal as of right. Although Scroghan does concede that Allstate obtained an interlocutory appeal as of right when it was sanctioned for noncompliance with the Discovery Order, he maintains that the propriety of that order is a distinct and severable issue from the propriety of the imposition of sanctions. We disagree.

While we do not condone the practice of intentionally violating discovery orders to obtain appellate review of those orders, we recognize that such a practice can act as an important "safety valve," which relieves parties from generally non-appealable discovery orders. *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 726 F.2d 1150, 1157 (7th Cir.1984), *rev'd on other grounds,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). While finding no Indiana case law that specifically discusses the propriety of this method of obtaining review, we note that the Seventh Circuit has explained it well:

Confining the right to get appellate review of discovery orders to cases where the party against whom the order was directed cared enough to incur a sanction for contempt is a crude but serviceable method, well established in case law, of identifying the most burdensome discovery orders and in effect waiving the finality requirement for them.

*Id.* Therefore, while we certainly do not encourage parties to intentionally violate a discovery order so as to be sanctioned and thus obtain an interlocutory appeal as of right, we can see the narrow situations, such as this one, where such a strategy may be utilized. A party in Allstate's position has few options since complying with the court's discovery order, proceeding through a trial, and ultimately winning on appeal would be a hollow victory indeed when the information sought to be protected would then already have been disclosed. In such situations, if a party is willing to incur possibly serious sanctions to obtain review of a discovery order, then the option should be available. This court has jurisdiction to review the Discovery Order.

## II. Relevance of Discovery Requests

■ Next, Allstate contends that Scroghan's requested discovery is not relevant to his bad faith claim. The relevance of discovery requests is primarily governed by T.R. 26(B)(1), which states:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in

the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

In addition, generally, Indiana's discovery rules were designed to allow a liberal discovery process that would provide parties with information essential to the litigation of the issues and to promote settlement. *Rivers v. Methodist Hosp., Inc.,* 654 N.E.2d 811, 813 (Ind.Ct.App.1995).

■ Here, Scroghan is seeking a wide variety of corporate information from Allstate on the grounds that "the best way to understand why and how Allstate acted as it did in Scroghan's case is to understand the corporate mentality underlying the conduct of the individuals involved in his claim." *Appellee's Br.* at 43. Allstate argues that such information is irrelevant to his bad faith claim because its general business practices and motivations are not at issue; only its behavior regarding Scroghan's claim is at issue. Faced with such extensive requests, it is possible that another court may have exercised its discretion differently. However, because of the fact-sensitive nature of discovery matters, the trial court's ruling here is cloaked with a strong presumption of correctness on appeal. *Brown v. Dobbs,* 691 N.E.2d 907, 909 (Ind.Ct.App.1998). Given that our discovery rules were drafted to allow a liberal discovery process, we cannot say that the trial court abused its discretion by finding the "information sought to be reasonably

calculated to lead to the discovery of admissible evidence." T.R. 26(B)(1).

### III. Discovery Requests Unduly Burdensome

■ Scroghan's original Request 6 sought: "All documents relating to bad faith claims or lawsuits filed against defendant, Allstate Insurance Company, arising out of uninsured claims initiated by Allstate's own insureds since 1990." *Appellant's App.* at 930. Request 43 sought: "All documents pertaining to prior depositions and affidavits, including bad faith claim litigation, since 1990 of Allstate's: (a) Adjusters and supervisors; and (b) Company officers." *Id.* The trial court previously limited Requests 6 and 43 to just those documents, depositions, and affidavits relating to Indiana uninsured motorist claims against Allstate, which allege bad faith from 1994 through 1997. Allstate contends that Scroghan's Requests 6 and 43, even as limited by the trial court, are unduly burdensome and too expensive for it to produce.

Our Supreme Court has previously stated "discovery should go forward, but, if challenged, a balance must be struck between the need for the information and the burden of supplying it." *WTHR-TV v. Cline,* 693 N.E.2d 1, 6 (Ind.1998).

■ The trial court determined that Scroghan's original requests were burdensome and thus, has already limited them to only those claims involving Indiana uninsured motorists from 1994 through 1997. Just as trial courts act as gatekeepers regarding the admission of expert opinion testimony, so too do they act in such a fashion in adjudging discovery disputes. *See Clark v. Sporre,* 777 N.E.2d 1166, 1170 (Ind.Ct.App.2002) (trial court considered gatekeeper for expert opinion evidence). Here, the trial court's actions in limiting Scroghan's discovery requests rather than

finding them overly burdensome strikes the kind of discovery balance contemplated by our Supreme Court in *WTHR-TV. WTHR-TV*, 693 N.E.2d at 6. The trial court acted within its discretion in this regard.

## IV. Protective Order

■ Allstate next argues that the trial court abused its discretion in not granting its request for a protective order because the documents sought by Scroghan are either trade secrets or confidential in nature.

T.R. 26(C) provides that a trial court may, for good cause shown, take measures to limit discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *Munsell v. Hambright*, 776 N.E.2d 1272, 1277 (Ind.Ct. App.2002). Two such measures involve issuing a protective order that the requested discovery may only be had on specified terms and conditions or that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way. T.R. 26(C)(2), (7). T.R. 26(C) also allows a trial court to impose certain conditions upon discovery, upon a showing of good cause, when a party from whom discovery is sought requests judicial protection from perceived abuse of the discovery process. *Wright v. Mount Auburn Daycare/Preschool*, 831 N.E.2d 158, 163 (Ind.Ct.App.2005).

Although the trial court denied Allstate's overall request for a protective order, it also reviewed certain documents *in camera* and determined those to be trade secrets. Allstate continues to claim that other documents requested by Scroghan also require protection. The specific documents claimed as trade secrets include the Colossus materials (Request 30) and the McKinsey documents (Request 21). The Colossus materials mainly include Allstate's computer program used to assist personnel in evaluating claims and the manuals explaining how the program works.[5] The McKinsey documents encompass materials created in connection with Allstate's hiring of a management consulting firm (McKinsey & Co.) to create and implement its Claim Core Process Redesign ("CCPR"), which included various cost control measures aimed at reducing the amount paid out on claims. Allstate also claims the following documents are confidential and also should have been granted a protective order: all documents pertaining to employment compensation information on the Allstate employees involved with Scroghan's claim (Request 14), all manuals and documents relating to performance, evaluation and compensation, incentive programs, and retirement funds (Request 15), all cost control manuals and procedures (Request 21), and all training materials and manuals (Request 22).

Here, we find that the trial court did abuse its discretion in denying Allstate's requests for a protective order. The aim of discovery is to provide parties with evidence for use in their present case. *See generally* T.R. 26(B)(1) (discovery available regarding matters involved in pending action). Scroghan has made no showing that discovery under a protective order would be detrimental to his case, but discovery without a protective order could be detrimental to Allstate. Therefore, the trial court abused its discretion in not

5. The owner of the Colossus software, Computer Services Corporation ("CSC"), sought to intervene in the trial proceeding, ostensibly to protect its program from disclosure to competitors. The trial court denied both CSC's motion to intervene and its motion for a protective order.

granting Allstate's request for a protective order.

## V. Sanctions

Lastly, Allstate argues that, because the Discovery Order is unreasonable, the trial court abused its discretion in imposing sanctions against Allstate for its failure to: (1) comply with the Discovery Order, and (2) properly designate its T.R. 30(B)(6) corporate representatives. We disagree.

■ After considering that Allstate failed to completely respond to Scroghan's first RFP, essentially ignored Scroghan's informal attempts at obtaining discovery, failed to comply with the trial court's order compelling discovery, and also necessitated many hours of hearings before the court and the Special Master, the trial court followed the recommendations of the Special Master and sanctioned Allstate $10,000 for disobeying its Discovery Order.

■ The proceedings leading up to the issuance of sanctions for Allstate's failure to properly designate its T.R. 30(B)(6) corporate representatives were lengthy. T.R. 30(B)(6) states, in relevant part:

A party may in his notice name as the deponent an organization, including without limitation a governmental organization, or a partnership and designate with reasonable particularity the matters on which examination is requested. · The organization so named shall designate one or more officers, directors, or managing agents, executive officers, or other persons duly authorized and consenting to testify on its behalf.

Initially, in response to Scroghan's Third Set of Interrogatories, Allstate responded that "Allstate would consult with counsel and, subject to that consultation, would probably produce Nancy Brechbuhl...." *Appellant's App.* at 3217. This response is just one example of the general manner in which Allstate responded to Scroghan's interrogatories. After the trial court granted Scroghan's motion to compel Allstate to designate, without evasion and ambiguity, its T.R. 30(B)(6) representatives for thirty-two areas of inquiry, Allstate filed its amended responses to Scroghan's Third Set of Interrogatories and responded with the exact same language: "Allstate would consult with counsel and, subject to that consultation, would probably produce Nancy Brechbuhl...." *Id.* at 3252–3313. The Special Master also heard argument on the issue and recommended that the trial court sanction Allstate for its evasive answers. The trial court then sanctioned Allstate $3,500.

Based on the egregious nature of Allstate's evasive tactics in responding to Scroghan's discovery requests, we find that the trial court was *well* within its discretion to order both of these de minimus monetary sanctions. Such evasion could easily have warranted more significant monetary sanctions.

## VI. Conclusion

In conclusion, we affirm the trial court's ruling that Scroghan's requested discovery is relevant to the subject matter of the pending action and is not unduly burdensome. We reverse the trial court's order denying Allstate's request for a protective order and remand with instructions to enter a protective order that provides the following:

1. Plaintiffs and their counsel will return all material and all copies of material produced by Defendant in connection with this matter, and all copies made of such material, at the conclusion of this action, including those given to co-counsel to the Plaintiff's counsel, legal assistants and secretaries or other support personnel necessary for the litigation of this action, the Court Reporter(s) in this action, and witness or prospective

witnesses (including designated expert witnesses and consultants employed by parties or the counsel for the parties).

2. Plaintiffs and their counsel will not copy any material produced by Defendant in response to discovery requests in this matter, except for use in this case, and all copies shall be treated in the same manner as documents produced by Defendant for Plaintiff in response to Plaintiffs' requests for production.

3. Plaintiffs and their counsel will not use any such material or copies of material received or obtained from Defendant during the course of this action in any other case, action, or proceeding.

4. Plaintiffs will not distribute any material or copies of material received or obtained from Defendant during the course of this action to any other person, organization or entity of any type during the course of this action, or after conclusion of this action, except for the parties to this action, the Court and the Court's personnel, the counsel to the parties for this action (including such counsel's co-counsel, legal assistants and secretaries or other support personnel necessary for the litigation of this action), the Court Reporter(s) in this action, and witness or prospective witnesses (including designated expert witnesses and consultants employed by parties or the counsel for the parties) necessary to prosecute the action or defend matters in the action.

5. Plaintiffs will not make public or disclose to any other person or entity or organization of any type any of the information contained in any of the materials or copies of materials received or obtained from Defendant during the course of this action, except to use such materials or copies of materials during the litigation of this action at trial or in an appeal, except for the parties to this action, the Court and the Court's personnel, the counsel to the parties for this action (including such counsel's co-counsel, legal assistants and secretaries or other support personnel necessary for the litigation of this action), the Court Reporter(s) in this action, and witness or prospective witnesses (including designated expert witnesses and consultants employed by parties or the counsel for the parties) necessary to prosecute the action or defend matters in the action.

6. All material and copies of material that Plaintiffs receive from Defendant as responses to discovery in this matter shall be deemed to be confidential documents without the necessity of a "confidential" marking on any such materials.

*Appellant's App.* at 232–34.

Finally, we affirm the trial court's orders imposing sanctions for Allstate's evasion.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and CRONE, J., concur.