## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



APPELLANT PRO SE

Yolanda R. Marshall
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Jennifer L. Fisher
Hinshaw & Culbertson LLP
Schererville, Indiana

J. Dustin Smith
Manley Deas Kochalski LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Yolanda R. Marshall,

*Appellant-Defendant,*

v.

HSBC Bank USA, National Association,[1]

*Appellee-Plaintiff.*

April 15, 2019

Court of Appeals Case No.
18A-MF-1959

Appeal from the
Hamilton Superior Court

The Honorable
Darren J. Murphy,
Judge Pro Tempore

Trial Court Cause No.
29D03-1511-MF-9429

---

[1] The captions on the cover pages of the parties' briefs incorrectly state the name as "HSBC Bank US, National Association."

**Kirsch, Judge.**

Yolanda R. Marshall ("Marshall") appeals the trial court's August 16, 2018 orders denying her motion to compel discovery and her motion to set aside the "In Rem Summary Judgment, Default Judgment and Decree of Foreclosure" ("Default Judgment") entered in favor of HSBC Bank USA, National Association, as Trustee for Option One Mortgage Loan Trust 2007-HL1, Asset-Backed Certificates, Series 2007-HL1[2] ("the Bank"). On appeal, Marshall raises the following restated issues:

> I. Whether the trial court showed bias, resulting in prejudice, when it delayed ruling on Marshall's motion to compel discovery related to post-judgment communications that she contends warranted the setting aside of the Default Judgment;

> II. Whether the trial court abused its discretion when it denied Marshall's motion to compel the Bank to produce those post-judgment communications; and

> III. Whether the trial court abused its discretion when it denied Marshall's motion to set aside the Default Judgment.[3]

---

[2] The foreclosure complaint was filed by "HSBC Bank USA, National Association, as Trustee for Option One Mortgage Loan Trust 2007-HL1, Asset-Backed Certificates, Series 2007-HL1." The instant appeal refers to the plaintiff as "HSBC Bank USA, National Association." It appears that the parties use these names interchangeably to refer to the same entity.

[3] Marshall raises only the first two issues. However, because a decision on Issues I and II, without more, would not settle the dispute between Marshall and the Bank, we understand Marshall to argue that, but for the trial court's denial of her Motion to Compel, the trial court would have set aside the Judgment on the basis of that evidence. Accordingly, we also address whether the trial court abused its discretion by denying Marshall's motion to set aside the Default Judgment pursuant to Indiana Trial Rule 60(B).

[2] We affirm.

## Facts and Procedural History[4]

[3] In December 2006, Marshall was the owner of a home ("the property") in Hamilton County, Indiana. Title to the property was held by Marshall, who was obligated to the Bank under a promissory note ("Note"). To secure the Note, Marshall had executed a mortgage ("Mortgage"), which was a valid first lien against the property and gave the Bank the right to foreclose on the property in the event of default. When Marshall defaulted under the terms of the Note and Mortgage, the Bank declared the entire indebtedness due and payable, and on November 10, 2015, the Bank filed "Complaint on Promissory Note and to Foreclose Mortgage" against Marshall.[5] *Appellant's App. Vol. 2* at 3, 14, 23.

[4] In November 2016, Marshall filed for protection under Chapter 7 Bankruptcy, which automatically stayed the foreclosure proceedings. On February 8, 2017, after the stay was lifted, the Bank filed a "Motion for Summary Judgment and Decree of Foreclosure," alleging that, although Marshall had been discharged

---

[4] We have discerned the pertinent facts and procedural history from our review of the record before us and from the trial court's record as reflected on Odyssey, the Indiana courts case management system, under Cause Number 29D03-1511-MF-9429. *See* Ind. Appellate Rule 27 ("The Record on Appeal . . . consist[s] of the Clerk's Record and all proceedings before the trial court . . . whether or not transcribed or transmitted to the Court on Appeal."). A reference to a document found in "*Odyssey*," will contain that designation.

[5] The Bank also named the following entities as defendants in the foreclosure action: North Star Capital Acquisition, PNC Bank, and Summerlin Trails Homeowners Association Inc. *Appellant's App. Vol. 2* at 3. However, these defendants did not file an answer to the Bank's complaint and are not parties to this appeal. *Odyssey, Motion for Default Judgment*.

in bankruptcy from any personal obligation under the Note and Mortgage, the Bank was "entitled to an in rem judgment and to proceed to Sheriff's sale to sell the mortgaged property and apply the proceeds to the in rem judgment, pursuant to the Federal Bankruptcy Order." *Odyssey*, *Motion for Summary Judgment*. The trial court entered the Default Judgment in favor of the Bank on May 4, 2017. *Odyssey*, *Default Judgment Order*.

[5] On August 17, 2017, the Hamilton County Sheriff's Department ("the Sheriff") sold the property to the Bank, as the highest bidder, upon the terms and conditions set forth in the "Judgment Entry and Decree of Foreclosure and Notice of Sheriff Sale." *Appellant's App. Vol. 2* at 15. The purchase of the property entitled the Bank to take possession, and the Bank sent an agent to inspect the property. When the agent found Marshall still living in the property, he gave her the contact information for his employer, Altisource. At that time, Altisource was a property management company and an agent of Ocwen Loan Servicing, LLC ("Ocwen"). Ocwen, in turn, serviced the Bank's Note and Mortgage.

[6] Altisource's agent told Marshall that cash might be available to assist in her relocation. Marshall contacted Altisource, and on August 30, 2017, Marshall and the agent came to an agreement pursuant to which Marshall would be paid $1,500 if she adhered to certain conditions, one of which required her to vacate the property by September 27, 2017. *Id*. at 36. The agent emailed the

"Occupancy Termination Agreement" ("the Occupancy Agreement")[6] to Marshall and requested that she sign and return it "within the next couple of days," and Marshall complied. *Appellant's Br.* at 6. Meanwhile, on September 1, 2017, the trial court granted the Bank its first Writ of Assistance, which ordered the Sheriff to assist the Bank in taking possession of the property. *Appellant's App. Vol. 2* at 6.

[7] On September 13, 2017, two weeks before the move-out deadline, Marshall received a voicemail from an Altisource employee who informed her: the property had "moved into nonmarketable"; Marshall should contact Ocwen because Altisource "no longer service[d] the property"; the Occupancy Agreement was being cancelled; and Marshall could continue to reside in the property. *Appellant's Br.* at 6; *Appellant's App. Vol. 2* at 18. To clarify the meaning of the call, Marshall telephoned Altisource that same day, and an agent told her that the foreclosure had been "rescinded." *Appellant's Br.* at 6. The agent stated that the property was now under the status of "nonmarketable" and that Marshall was allowed to continue to reside in the property. *Id.* The next day, September 14, 2017, Marshall contacted Ocwen, trying to confirm the new status. An Ocwen agent told Marshall that "the property's status had moved to "nonmarketable" and "congratulations." *Id.*

---

[6] It appears that the parties to the Occupancy Agreement were Marshall and Ocwen. *Appellant's App. Vol. 2* at 36-38.

The September telephone conversations with Altisource and Ocwen were both recorded.

[8] Thereafter, Marshall called the Sheriff to ascertain the department's procedure in executing the Writ of Assistance. Marshall learned that the Sheriff "normally wait[s] until the Plaintiff contacts them to give permission to continue with the Writ of Assistance," and, to date, the Bank had not contacted the Sheriff. *Id*. at 6-7. Neither the Sheriff nor the Bank made any further contact with Marshall, and she continued to reside in the property until April 9, 2018.

[9] On April 10, 2018, the Bank requested a second Writ of Assistance, contending that it had previously received a judgment and decree of foreclosure against the property, it had purchased the property at the Sheriff sale, it now owned the property and was entitled to immediate possession, and "[Marshall] and/or other persons are wrongfully residing in the subject real estate and have failed to surrender the real estate to [the Bank]." *Appellant's App. Vol. 2* at 14-15. The trial court granted the Bank a second Writ of Assistance on April 16, 2018. That same day, Marshall filed a verified motion to set aside the Default Judgment pursuant to Indiana Trial Rule 60(B)(6), (7), and (8). In support of her motion, Marshall cited to the September 13 and 14, 2017 telephone calls and the statements therein that the foreclosure had been rescinded, and she

could keep living in the property. The trial court vacated the second Writ of Assistance,[7] reopened the case, and set a hearing for April 17, 2018.

[10]     On May 23, 2018, Marshall served a Request for Production, asking the Bank to produce:  (1) "the audio files of the telephone conversations between [Marshall] and Altisource on September 13, 2017," and (2) "the audio files of the telephone conversations between [Marshall] and Ocwen on September 14, 2017."[8]  *Id.* at 29.  Less than two weeks later, on July 6, 2018, Marshall, without first reaching out to the Bank, filed a motion to compel discovery of the September 2017 telephone calls.  The Bank filed a response in opposition to Marshall's motion to compel, arguing that the motion should be denied because Marshall failed to comply with Indiana Trial Rule 26(F), which requires certification that the movant made a reasonable effort to reach an agreement with opposing counsel before filing a motion to compel.  *Id.* at 24-25.  The Bank also filed a response to Marshall's Request for Production, arguing that Marshall sought evidence that was not relevant to the subject matter of the litigation.  *Id.* at 26-27.  In her reply, Marshall countered, without elaboration,

---

[7] This allowed Marshall to continue living in the property.

[8] It was Marshall's theory that the contents of those recordings reflected the Bank's intent to give this property to Marshall as a gift.  During the hearing on the motion to set aside, Marshall stated:  "If it is established that it was a gift, or if it's established that it was a new contract that was entered into, that would set aside [the Judgment] because that means the [J]udgment was not a judgment, they removed the [J]udgement by their own voluntary actions."  *Tr. Vol. II* at 10.

that the recordings were relevant since they gave "direct facts for the Motion to Set Aside/Vacate Judgment." *Id*. at 34.

[11] During an August 14, 2018 hearing, the trial court began by inviting Marshall to present any argument in support of her Trial Rule 60(B) motion to set aside the foreclosure judgment. *Tr. Vol. II* at 4. Marshall immediately asked if the trial court had made a ruling on the pending motion to compel discovery. The trial court responded by denying the motion and saying, "The discovery tools are for pending cases, this case has been done for a year, so from the Court's point of view unless it's necessary, per the explanation of the trial rules, there's no more discovery to be had." *Id*. at 4-5. Marshall said she understood and proceeded with her argument on the motion to set aside. *Id*. at 5.

[12] Over the Bank's objection, Marshall introduced into evidence a copy of the Occupancy Agreement as proof that there was a relationship between the Bank, Ocwen, and Altisource. Next, Marshall offered into evidence the transcripts and recordings of the September 2017 conversations between herself and each of Altisource and Ocwen—recordings from which Marshall learned that the foreclosure was rescinded and that she could continue to live in the property. In response to the Bank's objection, the trial court asked Marshall why these exhibits were relevant. Marshall responded that the recordings supported her claim that she owned the property because the Bank had either given it to her as an "an inter vivos gift" or by way of a "unilateral contract." *Id.* at 10. Marshall argued that the Bank "removed the [Default J]udgment by their own voluntary actions," and said she "was given the impression that it was a gift because they

voluntarily said they rescinded the mortgage, the foreclosure." *Id*. at 13. Marshall interpreted these actions to mean that there was no longer a Default Judgment, saying, "if they're rescinding it, they're taking away the judgment." *Id*. at 13. The trial court did not believe that the property was legally in the possession of Marshall and denied her motion to set aside the Default Judgment. Marshall now appeals.

## Discussion and Decision

## I. No Bias and No Prejudice

[13] Marshall contends that the trial court "showed extreme bias in favor of the [Bank]" when the court did not rule on her motion to compel before the hearing on her motion to set aside.[9] *Id.* at 11. Marshall notes that the trial court began the hearing without addressing the pending motion to compel, even though the court had already decided to deny the motion. *Id*. Observing that the trial judge only denied her motion after Marshall inquired as to its status, Marshall argues, the delay "was unfair and prejudicial against [Marshall]" because it showed "bias in favor of [the Bank] by not allowing [Marshall] knowledge of its decision and ability to prepare a response . . . ." *Id*.

[14] "A party's success on a claim of bias and prejudice hinges on its ability to make a plain showing that unfairness and prejudice existed and controlled the result."

---

[9] We note that, contrary to Marshall's claim, the trial court did rule on her motion to compel before Marshall began to introduce evidence in support of her motion to set aside the Default Judgment. *Tr. Vol. II* at 4-5.

*M.S. ex rel. Newman v. K.R.*, 871 N.E.2d 303, 314 (Ind. Ct. App. 2007), *trans. denied*. "The law presumes that a judge is unbiased and unprejudiced." *L.G. v. S.L.*, 88 N.E.3d 1069, 1073 (Ind. 2018). "To overcome this presumption, the moving party must establish that the judge has personal prejudice for or against a party." *Id.* "Adverse rulings and findings by a trial judge are not sufficient reason to believe the judge has a personal bias or prejudice." *Id.* In her brief, Marshall provides only conclusory statements that the delay "was unfair and prejudicial against [Marshall]" because it showed "bias in favor of [the Bank] by not allowing [Marshall] knowledge of its decision and ability to prepare a response . . . ." *Tr. Vol. II* at 11. Yet, Marshall does not offer how extra time would have allowed her to prepare a successful response to the judge's ruling, nor does she offer any other evidence to prove she was prejudiced by the timing of the trial court's ruling on her motion to compel. Accordingly, we reject Marshall's claim that the trial court was biased in favor of the Bank and that such bias prejudiced the outcome of Marshall's case.

## II. Motion to Compel

[15]     Marshall next contends that the trial court abused its discretion by denying her motion to compel. "Trial courts are afforded broad discretion in ruling on issues of discovery." *Angelopoulos v. Angelopoulos*, 76 N.E.3d 852, 859 (Ind. Ct. App. 2017) (citing *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 321 (Ind. Ct. App. 2006)). On appeal, "we will reverse the trial court only upon a showing that the trial court abused this discretion." *Id.* "That is, we will reverse the trial court's ruling on a discovery matter only if the court's decision is clearly against

the logic and natural inferences to be drawn from the facts and circumstances before the court." *Id*. On appeal, we will not reweigh the evidence or assess the credibility of witnesses. *Id*. Instead, "we simply determine whether the evidence and circumstances before the court served as a rational basis for the trial court's decision." *Id*.

[16] Prior to the start of the hearing on the motion to set aside, Marshall asked the trial judge whether he had ruled on her motion to compel. *Tr. Vol. II* at 4. In denying her motion, the trial judge responded, "The discovery tools are for pending cases, this case has been done for a year, so from the Court[']s point of view unless it's necessary, per the explanation of the trial rules, there's no more discovery to be had."[10] *Id*. at 4-5. On appeal, Marshall contends that the trial judge abused his discretion in denying her motion to compel discovery because his ruling "does not correspond to Indiana Trial Rule 28(H)." *Appellant's Br*. at 12. Specifically, she understands the trial judge's comments to mean that the motion to compel was denied because discovery is only permitted prior to judgment. *Id*. The Bank, however, acknowledges that such a conclusion would be contrary to Trial Rule 28(H), which allows for discovery after judgment "in proceedings to enforce or challenge the judgment." *Appellee's Br.* at 15 (citing Ind. Trial Rule 28(H)). Contrary to Marshall's interpretation, the trial judge did not indicate that discovery is *never* available in post-judgment proceedings.

---

[10] Marshall contends that she does not recall the court having made the transcribed statement. Instead, it is her recollection that the trial court said, "it is too late for discovery," to which Marshall responded, "Ok. Ok." *Appellant's Br*. at 12.

Rather, the trial judge indicated that discovery is available only where "necessary, per the explanation of the trial rules." *Tr. Vol. II* at 5. In other words, discovery is available only if "*relevant* to the subject matter involved in the pending action." *See* Ind. Trial Rule 26(B)(1) (emphasis added).

[17] To determine whether the September 2017 telephone conversations were relevant to the subject matter of the litigation, and therefore discoverable, we must look to the issues before the trial court. Marshall sought relief from the Default Judgment pursuant to Indiana Trial Rules 60(B)(6), (7), and (8). Trial Rule 60(B)(6) permits a trial court to set aside a void judgment. "'A void judgment is one that, from its inception, is a complete nullity and without legal effect . . . .'" *Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind. 1998) (quoting 46 Am. Jur. 2d *Judgments* § 31 (1994)). Generally, in the context of foreclosure actions, a party bringing a "motion for relief from judgment under Trial Rule 60(B)(6)," alleges that "the default judgment was void for lack of personal jurisdiction because [the party] had no notice of the foreclosure proceeding." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 816 (Ind. 2012). Here, Marshall makes no such claim, and even if she did, Marshall's conversations with Altisource and Ocwen would not be relevant to the question of whether the Default Judgment was void from its inception. The trial court did not abuse its discretion when it denied Marshall's motion to compel pursuant to her argument under Trial Rule 60(B)(6).

[18] Trial Rule 60(B)(7) permits a trial court to set aside a judgment that has been satisfied, released, or discharged. Marshall contends that statements made by

Altisource and Ocwen—that the mortgage or foreclosure had been rescinded—was evidence that Marshall had been released from the foreclosure judgment. Marshall characterizes the purported rescission as arising from the Bank having given her the property through a unilateral contract or as an inter vivos gift. *Tr. Vol. II* at 9-10. Regarding the claim of unilateral contract, Indiana "law is settled that a right to the possession of real estate is an interest therein, and any contract *which seeks to convey an interest in land is required to be in writing*" to be effective under the Statute of Frauds. *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001) (emphasis in original) (internal quotation marks omitted). The evidence contained in the recorded conversations was not relevant to this issue.

[19] As to the claim that the property was a gift, our court has said, "To make a valid inter vivos gift, there must be both an intention to give and a stripping of the donor of all dominion or control over the given thing and a change of title must be irrevocable. *Brackin v. Brackin*, 894 N.E.2d 206, 210 (Ind. Ct. App. 2008). During the hearing to set aside, the Bank's counsel said, "Clearly our client has not gifted its property to Miss Marshall. Our client has never taken any action to set aside the judgment that it has, it is not agreeable to such." *Tr. Vol. II* at 11. Here, the Bank categorically denied any intention to give Marshall the property as a gift; therefore, general statements made by the Bank's agents regarding a purported rescission would not be relevant to the question of whether the Default Judgment was satisfied, released, or discharged by means of an inter vivos gift from the Bank to Marshall. The trial court did not abuse

its discretion when it denied Marshall's motion to compel pursuant to her argument under Trial Rule 60(B)(7) regarding unilateral contracts and gifts.

[20] Trial Rule 60(B)(8) allows a trial court to set aside a judgment where "relief is otherwise necessary and just." *Gipson v. Gipson*, 644 N.E.2d 876, 877 (Ind. 1994). Trial Rule 60(B)(8) "allows the trial court to set aside a judgment within a reasonable time for any reason justifying relief other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4)." *Brimhall v. Brewster*, 864 N.E.2d 1148, 1153 (Ind. Ct. App. 2007) (internal quotation marks omitted), *trans. denied*. "The trial court's residual powers under subsection (8) may only be invoked upon a showing of exceptional circumstances justifying extraordinary relief." *Id*. Trial Rule 60(B)(8) "is an omnibus provision which gives broad equitable power to the trial court in the exercise of its discretion and imposes a time limit based only on reasonableness." *Id*. Nevertheless, under that rule, "the party seeking relief from the judgment must show that its failure to act was not merely due to an omission involving the mistake, surprise or excusable neglect. Rather some extraordinary circumstances must be demonstrated affirmatively." *Id*.

[21] Here, Marshall presented no evidence of "exceptional circumstances justifying extraordinary relief." T.R. 60(B)(8). During the hearing, Marshall did not dispute that she took out this loan, that she failed to repay it, and that the matter was fully and fairly litigated on the merits. In fact, the foreclosure on the property occurred only after Marshall's debt under the Note had been discharged in bankruptcy. Marshall also signed the Occupancy Agreement,

agreeing to vacate the property by September 27, 2017 in exchange for $1,500 in relocation assistance. *Appellant's App. Vol. 2* at 35. This was a tacit admission that she no longer had the right to live in the property. Our review of the twenty-four-page transcript reveals that the trial court fully understood the contents of the recordings, and nothing would have been added by admission of the recordings. Marshall has cited to no exceptional circumstances justifying extraordinary relief from the entry of the Default Judgment. The trial court did not abuse its discretion when it denied Marshall's motion to compel pursuant to her argument under Trial Rule 60(B)(8).

## III. Denial of Motion to Set Aside

In the section above, we focused on Trial Rule 60(B)(6), (7), and (8) to determine whether the motion to compel was properly denied. That inquiry addressed the relevance of the omitted evidence. Here, we analyze those same factors, however, in this section we consider whether the trial court abused its discretion when it denied Marshall's motion to set aside the Default Judgment. A motion made under Trial Rule 60(B) to set aside a judgment is addressed to the equitable discretion of the trial court. *U.S. Bank, Nat'l Ass'n v. Miller*, 44 N.E.3d 730, 738 (Ind. Ct. App. 2015) (citing *In re Paternity of P.S.S.,* 934 N.E.2d 737, 740-41 (Ind. 2010). "'Typically, we review a trial court's ruling on a motion to set aside a judgment for an abuse of discretion, meaning that we must determine whether the trial court's ruling is clearly against the logic and effect of the facts and inferences supporting the ruling.'" *Id*. (quoting *Hair v. Deutsche Bank Nat'l Tr. Co.,* 18 N.E.3d 1019, 1022 (Ind. Ct. App. 2014)).

[23] While Marshall makes no specific argument on appeal, she argued to the trial court that the Default Judgment should be set aside because the Bank did not act on the 2017 Writ of Assistance, the Bank never contacted her about moving out, and the Bank's agent gave her permission to continue to reside on the property. *Tr. Vol. II* at 10. The trial court correctly noted that those factors only related to the trial court's decision on the Writ of Assistance, which the trial court noted Marshall kept "confusing and conflating" with the motion to set aside. *Id.* at 13, 10.

[24] As was true before the trial court, here, the issue is not whether Marshall had permission to live on the property for almost a year after the Default Judgment; instead, the issue is whether the trial court abused its discretion when it determined that the Default Judgment was valid and survived a motion to set aside. In the instant action, Marshall defaulted under the terms of the Note and Mortgage. After the Bank declared the entire indebtedness due and payable, it filed a complaint to foreclose on the property. However, prior to the completion of the foreclosure action, Marshall filed for protection under Chapter 7 Bankruptcy, thereby staying the foreclosure proceedings. Once the stay was lifted, the Bank filed a motion for summary judgment and decree of foreclosure, alleging that, although Marshall had been discharged in bankruptcy from any personal obligation on the Note and Mortgage, the Bank was "entitled to an in rem judgment and to proceed to Sheriff's sale to sell the mortgaged property and apply the proceeds to the in rem judgment, pursuant to the Federal Bankruptcy Order." *Odyssey, Motion for Summary Judgment*. On

May 4, 2017, the trial court entered the Default Judgment in favor of the Bank. *Odyssey, Default Judgment Order.* Marshall did not appeal the grant of summary judgment.

[25] To grant the motion to set aside the Default Judgment, the trial court had to find that the property rightfully belonged to Marshall and that such ownership was a significant enough factor to set aside the Default Judgment pursuant to Trial Rule 60(B)(6), (7), and (8). Here, the trial court considered Marshall's arguments, but, as the finder of fact, it rejected Marshall's testimony that the property had been transferred to her by way of a gift or contract. The trial judge said:

> Alright I've reviewed your record and it appears that you've participated in this case from the beginning, you were involved in potential conversations, settlement conversations, you've appeared at the Motion for Summary Judgment, the order was granted in favor of the plaintiff, it was a valid judgment based upon evidence, the Court ruled in favor of the plaintiff and against you that order is in effect over a year ago [sic], what like May of 2017 and then in response they sold the property. So from my experience you're not even in the chain of title anymore. You provided me zero evidence so far to substantiate a Trial Rule 60 rule for a Motion to Set Aside and that's what I need to know, do you have anything else because this isn't going to do it.

*Tr. Vol. II* at 15-16. Marshall continued to explain that the property belonged to her either as a gift or through a unilateral contract, after which the trial court said:

> Miss Marshall I think that you placed a lot of hope in this argument. Unfortunately, I don't see a basis from what you've told me so far to set aside the judgment . . . .

*Id.* at 17. Based on this evidence we cannot say that the trial court abused its discretion when it denied Marshall's motion to set aside. For the foregoing reasons, we affirm the judgment of the trial court (1) denying Marshall's motion to compel; (2) denying Marshall's motion to set aside the Default Judgment, and (3) granting a writ of assistance in favor of the Bank.

[26] Affirmed.

Riley, J., and Robb, J., concur.